UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ONDREA G. RODGERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) 1:13-cv-00941-RLY-TAB |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY OVERRULING IN PART DEFENDANT'S
OBJECTIONS TO THE MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

Ondrea G. Rodgers seeks judicial review of the final decision of the defendant, Commissioner of the Social Security Administration, denying her applications for Social Security Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). The Administrative Law Judge ("ALJ") determined that despite Ms. Rodgers's severe physical impairments, she did not qualify as disabled under Titles II and XVI of the Social Security Act ("the Act"). *See* 42 U.S.C §§ 416(i), 423(d), and 1382c(a)(3)(A). The court referred the case to Magistrate Judge Baker for consideration pursuant to 28 U.S.C. § 636(b)(1). The Magistrate Judge recommended that the court reverse the Commissioner's determination and remand to the ALJ for further proceedings. The Commissioner now objects to the Magistrate Judge's Report and Recommendation, arguing that the ALJ properly denied Rodgers's applications for DIB and SSI. For the

1

reasons set forth below, the court **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's Report and Recommendation.

I.  **Background**

In April 2007, Rodgers filed an application for DIB, alleging disability due to severe arterial arthritis in her knees and ankles, high blood pressure, and anemia. (R. at 289). The Commissioner denied her application initially and again upon reconsideration. (R. at 120, 125). Rodgers requested a hearing before an ALJ who, in February 2010, determined that she was not disabled under Sections 416(i) and 423(d) of the Act. (R. at 92–105).

After requesting review of the ALJ's decision, Rodgers filed new applications for DIB and SSI in March 2010. (R. at 255–66). The Commissioner likewise denied the March 2010 applications initially and upon reconsideration, and Rodgers requested another hearing before the ALJ. (R. at 160–76). On July 8, 2011, the Appeals Council of the Office of Disability Adjudication and Review vacated the ALJ's February 2010 decision and remanded the case for another hearing. (R. at 115). The Appeals Council ordered the ALJ to associate the April 2007 application with the March 2010 applications and issue a new decision. (R. at 115–18).

On January 27, 2012, the ALJ presided over a second hearing where Rodgers appeared with counsel and testified. Richard A. Hutson, M.D., a board-certified orthopedist, testified as a medical expert. Constance R. Brown, an impartial vocational expert, also provided testimony. (R. at 12). On March 5, 2012, the ALJ again determined that Rodgers did not qualify as "disabled" under Sections 416(i), 423(d), or

1382c(a)(3)(A) of the Act. (R. at 27). The Appeals Council denied Rodgers's request for review of the ALJ's decision (R. at 1), making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. §§ 404.955(a), 404.981.

The ALJ made the following findings: (1) Rodgers meets the insured status requirements of the Act through December 31, 2012 (R. at 16); (2) Rodgers has not engaged in substantial gainful activity since January 30, 2007, the alleged onset date (R. at 16); (3) Rodgers's severe impairments include degenerative joint disease in the right knee and left ankle, as well as mild obesity (R. at 16); (4) none of these impairments or combination thereof meets or medically equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 19); (5) Rodgers retains the residual functional capacity ("RFC") to perform the following: lift and carry up to 10 pounds occasionally and less than 10 pounds frequently; sit for a total of approximately six hours in an eight-hour work day; stand-walk in combination for a total of approximately two hours in a work day; and occasionally perform postural activities such as balancing, bending, kneeling, crouching, and crawling (R. at 26); (6) Rodgers has the capability of performing past relevant work as a receptionist or phone canvasser, as these positions generally would not require Rodgers to perform activities precluded by her RFC (R. at 26–27); and (7) Rodgers has not been under a disability as defined in the Act. (R. at 27).

On April 11, 2013, Rodgers filed a complaint in this court for review of the Commissioner's decision pursuant to Section 205(g) of the Act, as amended, 42 U.S.C. § 405(g). She made the following principal objections to the ALJ's decision: (1) substantial evidence fails to support the ALJ's finding that Rodgers's severe impairments

3

do not meet or equal Listing 1.02(A)[1]; (2) the ALJ's credibility determination runs contrary to Social Security Ruling 96-7p; and (3) substantial evidence does not support the ALJ's determination that Rodgers is not disabled because she could perform her past jobs as a receptionist or telephone canvasser. (Filing No. 22).

On August 5, 2014, the Magistrate Judge submitted a Report and Recommendation in this case, recommending that the court reverse and remand the case to the ALJ for further proceedings. (Filing No. 38). The Magistrate concluded that the ALJ (1) overlooked certain important evidence, (2) misstated evidence, (3) improperly used boilerplate language, and (4) erred in assessing Rodgers's credibility. (*Id.*). The Commissioner objects to the Report and Recommendation, arguing that substantial evidence does support the ALJ's determination and that Rodgers has failed to show that any alleged error was harmful. (Filing No. 39).

---

[1] The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has deemed disabling. 20 C.F.R. § 404.1545. Listing 1.02(A) concerns:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively . . .

20 C.F.R. Part 404, Subpart P, Appendix 1.

## II. Standards of Review

### A. ALJ Decision

When an Appeals Council denies review as it did in this case, the ALJ's decision constitutes the final decision of the Commissioner. 20 C.F.R. § 404.981. Pursuant to 42 U.S.C. § 405(g), a district court has jurisdiction to review the decision of the ALJ. The ALJ's findings of fact are conclusive so long as substantial evidence supports them and no error of law occurred. *Id.* "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Although the court considers the entire administrative record, it will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). But "an ALJ must consider all relevant evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ "need not mention every piece of evidence so long as he builds a logical bridge from the evidence to his conclusion." *Id.* (citation omitted). In other words, the court confines its scope of review to the ALJ's rationale. *Tumminaro v. Astrue*, 671 F.3d 629, 632 (7th Cir. 2011) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95, 63 S.Ct. 454, 87 L.Ed. 626 (1943)).

### B. Magistrate Judge's Report and Recommendation

When reviewing a magistrate judge's Report and Recommendation, "the district judge may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b).

5

The court may, in its discretion, elect to receive additional evidence or return the matter to the magistrate judge with instructions. *Id.* The court reviews *de novo* any part of the magistrate judge's disposition to which a party has properly objected. *Id.* However, when "no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). Thus, the court will review the Commissioner's objections under the standard of review that applies to the ALJ's decision.

## III. Discussion

### A. Applicable Law

To qualify for DIB or SSI, a claimant must prove that a medically determinable physical or mental impairment, which would result in death or which has lasted for a continuous period of at least twelve months, has prevented her from engaging in any substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A). The claimant must present evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1508, 416.908. Such medical evidence must consist of "signs, symptoms, and laboratory findings." *Id.* The claimant's mere statements of symptoms do not suffice. *Id.*

The Social Security regulations prescribe a sequential five-part test to determine disability status. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

> The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the

6

> regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520, 416.920. A finding of disability requires an affirmative answer at either step three or step five.

*Id.* at 351–52. The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Id.* at 352. The court now turns to the Commissioner's specific objections.

### B.     Analysis

The Magistrate Judge found that the ALJ failed to ground his determination of non-disability in substantial evidence, finding that (1) the ALJ misstated Dr. Podurgiel's evaluation; (2) the ALJ omitted certain evidence from his decision that supports a disability finding; (3) the ALJ mischaracterized Dr. Kahloon's August 2011 evaluation; (4) the ALJ improperly relied on boilerplate language to assess Rodgers's credibility; and (5) the ALJ omitted any explanation of Dr. Hutson's testimony and the reasons for which the ALJ relied upon it. (Filing No. 38 at 2–5). The Commissioner objects to the first four findings.

#### 1.     Dr. Podurgiel's Evaluation

As the Magistrate Judge notes, Rodgers's strongest argument against the ALJ's decision concerns the assessment of Dr. Rebecca Podurgiel, a consultative physician, and its impact on the ALJ's credibility determination. (Filing No. 38 at 4). At step four of the five-step test, the ALJ engages a two-step process to determine a claimant's RFC. The Social Security Administration defines RFC as "what an individual can still do

7

despite his or her limitations," taking into account the extent to which any impairments and related symptoms, such as pain, may limit his or her capacity to do work-related activities. SSR 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996). The ALJ first determined that Rodgers's impairments could reasonably be expected to cause the alleged symptoms. (R. at 25). The second step required the ALJ to evaluate the extent to which the intensity, persistence, and functionally limiting effects of the symptoms affect Rodgers's ability to do basic work activities. (R. at 25); 20 C.F.R. §§ 404.1529(c), 416.929(c). This step required a finding as to the credibility of Rodgers's statements concerning her symptoms and functional effects in light of the entire case record. *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). If the medical record fails to substantiate the alleged intensity or persistence of the pain, the ALJ must look to the "observations of treating and examining physicians, third-party testimony, the claimant's testimony and daily activities, functional restrictions, pain medication taken, and aggravating or precipitating factors . . ." *Herron v. Shalala*, 19 F.3d 329, 334 (7th Cir. 1994).

The ALJ concluded that Rodgers's subjective statements lack credibility "to the extent they are not reasonably consistent with the overall evidence of record," although he did not specify how much weight he afforded such statements. (R. at 25). In making this determination, the ALJ relied heavily upon a misstatement of Dr. Podurgiel's June 2007 evaluation. (*See* R. at 23–24). The ALJ mistakenly reported that "it was unclear to [Dr. Podurgiel] why [Rodgers] would be a candidate for total knee replacement surgery." (R. at 23). In fact, Dr. Podurgiel stated that it was unclear to her why Rodgers *would not be* a candidate for total knee replacement surgery ("TKR"). (R. at 396 (emphasis

8

added)). The ALJ proceeded to question Rodgers's credibility based on two subsequent occasions when she told her physical therapist that her doctors had recommended the surgery. (R. at 23–24). Moreover, the ALJ concluded that Rodgers's doctors prescribed only conservative treatments such as physical therapy and medication, and that a recommendation for TKR "does not appear shown [*sic*] by a greater portion of the medical evidence." (R. at 24). Therefore, the argument goes, the record of modest treatment recommendations belies Rodgers's subjective statements about the intensity, persistence, and limiting effects of her symptoms. (*See* R. at 23–25).

The Commissioner urges the court to look beyond the ALJ's mistake and recognize that, notwithstanding Dr. Podurgiel's statement, the weight of the evidence supports the ALJ's finding on Rodgers's credibility. (Filing No. 39 at 6–7). The ALJ notes that Dr. Podurgiel's report "confirmed that, early on, [Rodgers's] doctor found only early osteoarthritis in her knees." (R. at 24, 396). But in the same report, Dr. Podurgiel opined that Rodgers "appears to have osteoarthritis in her left ankle and bilateral knees," and further cited the opinion of Dr. Arthur Lorber, a treating orthopedist, that Rodgers's conditions are permanent. (R. at 396). The ALJ then cited Dr. Creso Bulcao's finding of only moderate degenerative joint disease with no opinion on whether Rodgers qualifies for TKR. (R. at 24, 656–57). The ALJ pointed out that Rodgers had failed to follow through with prescribed home exercises and water aerobics. (R. at 23). The ALJ also highlighted prescriptions of physical therapy and over-the-counter medications as evidence of modest treatment regimens, (R. at 23), but he failed to mention that a treating physician, Dr. Louis Winternheimer, contemplated knee surgery in June 2010. (R. at

9

579). Although such evidence, taken together, may lend support to the ALJ's credibility determination, the court cannot conclude that it constitutes substantial evidence.

The court acknowledges that an ALJ's credibility determination commands special deference, given his or her unique position to "assess a claimant's veracity and forthrightness." *Mobley v. Colvin*, No 4:12-cv-105, 2013 WL 4479073, at *4 (S.D. Ind. Aug. 19, 2013) (citing *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997)). We will uphold a credibility finding if the ALJ provides specific reasons, grounded in substantial evidence, to support that finding. *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009) (citation omitted); *see also Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed.") (citation omitted).

The Commissioner argues that the ALJ's misstatement constitutes harmless error, making remand unwarranted. (Filing No. 39 at 6–7). The ALJ did not merely misstate an ancillary fact as part of a larger proof that can withstand scrutiny absent the error. *Cf. Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008) (concluding that the ALJ's misstatements were outliers and did not indicate that the decision lacked an adequate factual basis). Rather, the ALJ relied upon the misstated evidence to cast doubt on the reliability of Rodgers's subjective statements and inaccurately summarize the treatments contemplated by her doctors. (R. at 23–24). Thus, to ignore this error would limit the court to conjecture about whether the ALJ would have, but for the error, found Rodgers credible. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (rejecting the notion that if the ALJ might have reached the same result had he or she considered the entire record,

10

such failure was harmless error). Absent the error, the ALJ would have had to confront Dr. Podurgiel's report and explain why it did not persuade. *See Berger*, 516 F.3d at 544 ("[t]he ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade"). Therefore, the court finds that the ALJ did not base his credibility determination on substantial evidence.

To be clear, accounting for the error does not demand a finding in the alternative. *See Myles*, 582 F.3d at 676 (noting that an omission of evidence from consideration warrants remand to the ALJ, but it does not require a different finding). But the ALJ must reevaluate the evidence and make a new credibility determination in a fresh light. *Id.*

## 2. Evidence Omitted from the ALJ's Decision

The Commissioner objects to the Magistrate Judge's finding that the ALJ's failure to address certain parts of the medical record warrants remand. (Filing No. 39 at 2–5). The Magistrate Judge summarized six instances where the ALJ either ignored or dismissed without explanation, evidence that supports a finding of disability. (Filing No. 38 at 3–4). The ALJ need only evaluate the record fairly. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Although the ALJ must consider all lines of evidence so that a reviewing court may determine whether a decision rests upon substantial evidence, this does not require mention of every piece of evidence. *Id.*

Several of the alleged gaps in the ALJ's examination of the record do not warrant remand. For instance, the Magistrate Judge contends that the ALJ should have addressed certain reports from a Wishard Hospital clinic that either lack appropriate medical

11

findings to support their conclusions or consist solely of the observations of a nurse practitioner. (Filing No. 38 at 3). In a January 2007 functional evaluation, an unidentified medical provider, whose signature is illegible, reports that Rodgers's ankle and knee conditions are "chronic" and states that she could not "walk around or go up and down stairs or carry heavy items." (R. at 569–70). The evaluation does not reference any medical facts or observations to support this conclusion. (*Id.*). Moreover, the ALJ cited multiple medical exams that report similar conditions with more specificity. (R. at 21); *see Denton*, 596 F.3d at 425 (noting that so long as the ALJ builds a logical bridge from the evidence to his conclusion, he need not mention every piece of evidence.). Notably, the ALJ's RFC determination incorporates the finding in the functional evaluation to the extent it recognizes Rodgers's limited ability to carry heavy items and to walk or stand for sustained periods of time. (R. at 26).

The Magistrate Judge also cites multiple medical evaluations from a Wishard Hospital clinic that show limitations upon examination of Rodgers. (Filing No. 38 at 3–4). A September 2009 evaluation notes that Rodgers has some crepitus and enlargement in her right knee, as well as a limp in her gait. (R. at 526). A March 2010 evaluation reports Rodgers's complaints of left ankle and right knee pain, swelling and limited ability to sustain activities for more than two- or three-hour intervals, limited range of motion in her ankle, and significant weight gain. (R. at 521–23). A July 2010 note states that Rodgers has limited range of motion in her ankle that limits her ability to walk more than a block before having to rest, climb stairs, or perform yard work and cooking for more than 15-minute intervals. (R. at 499). Another July 2010 examination noted that

12

Rodgers has crepitus in her right knee, limited range of motion in her left ankle, and a limp in her gait. (R. 581–82).

The ALJ, however, cites other evidence from treating, examining, and consultative physicians that make many of the same observations contained in the foregoing. (*See* R. at 21–22, 24); *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002) (finding the "logical bridge" requirement satisfied because the ALJ, though not citing each piece of evidence, cited other medical reports that provide substantially the same information). Moreover, Erin Ehninger, a treating nurse practitioner, performed each of the foregoing evaluations. The Social Security regulations do not consider nurse practitioners as "acceptable medical sources," such as licensed physicians, which are entitled to controlling weight. 20 C.F.R. § 404.1513(a), (d)(1). Although an ALJ must at least consider the reports of other medical sources, "their findings cannot establish the existence of a medically determinable impairment." *Phillips v. Astrue*, 413 F. App'x 878, 884 (7th Cir. 2010) (citation omitted). The ALJ considered the reports of Nurse Ehninger and J. Jeffries, another nurse practitioner, and determined that their opinions did not merit any special deference.[2] (R. at 25). In justifying this conclusion, the ALJ found that their conclusory assessments appeared at odds with the modest degenerative joint disease in Rodgers's right knee, the modest range of motion limitations in her right knee and left ankle, and her ability to stand and walk with and without a cane. (R. at 25–26). Thus, the ALJ did

---

[2] The court notes that the Magistrate Judge also found that Rodgers's argument that the ALJ improperly rejected the findings of Nurses Ehninger and Jeffries did not warrant remand. (Filing No. 38 at 5).

not err when he failed to mention the September 2009, March 2010, and July 2010 medical evaluations.

The court finds differently, however, with respect to a June 2010 functional evaluation that Rodgers's treating physician, Dr. Winternheimer, performed. Dr. Winternheimer found that very limited flexion, extension, and internal and external rotation in Rodgers's left ankle limits her range of motion, and, therefore, her ability to ambulate normally. (R. at 577). He also found that osteoarthritis in Rodgers's knees causes crepitus and pain with range of motion, and that her conditions significantly limit her ability to perform basic physical activities. (R. 577–80). "An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider 'all relevant evidence.'" *Myles*, 582 F.3d at 678 (citations omitted). Moreover, when a piece of evidence in the record does not support the ALJ's conclusion, he must confront such evidence *and explain* why he rejected it. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (emphasis added). The ALJ not only failed to square Dr. Winternheimer's evaluation with the opposing views of the other physicians, (*see* R. at 22–24), he neglected to even mention or cite to the evaluation in his decision. For this reason the court finds that substantial evidence does not support the ALJ's decision.

### 3. Dr. Kahloon's Evaluation

The Magistrate Judge found that the ALJ mischaracterized the findings of Dr. Arslan Kahloon, a consultative physician, from an August 2011 functional evaluation. (Filing No. 38 at 4). The thrust of this objection stems from the inconsistencies between Dr. Kahloon's observations upon examination and his medical opinions about Rodgers's

functional capabilities. First, Dr. Kahloon observed Rodgers walk from the waiting area to the examination room with the use of a cane, but then she positioned herself onto the examination table without the cane. (R. at 561). He noted that Rodgers has limited range of motion in her knees and ankles, although he observed no edema, swelling, or cyanosis in the lower extremities. (*Id.*). Dr. Kahloon also observed that Rodgers can tandem walk and stand on her heels and toes. (R. at 562). Notwithstanding his observations and without supportive medical findings, Dr. Kahloon opined in a questionnaire that Rodgers can sit for no more than 30 minutes without interruption and for no more than three hours total in an eight-hour workday. (R. at 555). He also opined, without citing medical findings, that Rodgers requires the use of a cane to ambulate, that she can only walk a quarter of a block without her cane, and that she cannot use her free hand to carry small objects when walking. (*Id.*).

The ALJ first cites Dr. Kahloon's findings to support the proposition that Rodgers can stand and walk with and without a cane. (R. at 16, 19, 23). Rodgers and the Magistrate Judge take issue with the ALJ's use of observational evidence (R. at 560–62) because it contradicts Dr. Kahloon's opinions as illustrated in the questionnaire (R. at 554–59). (*See* Filing No. 22 at 17; Filing No. 38 at 4–5). However, the ALJ determined that Dr. Kahloon's opinions regarding Rodgers's functional limitations lacked the support of appropriate medical findings and were inconsistent with the record as a whole. (R. at 26). Accordingly, the ALJ afforded Dr. Kahloon's opinions no weight in his determination. (*Id.*). Whether and to what extent a medical source explains or supports his or her opinions will dictate the weight, if any, that an ALJ will afford such opinions.

15

20 C.F.R. § 404.1527(c)(3); *see also Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (concluding that the ALJ can properly discount an opinion when the physician failed to support it with medical evidence). The court will not reweigh or resolve conflicts in the evidence. *Lopez*, 336 F.3d at 539. And the ALJ must only minimally articulate his justification for rejecting certain evidence of disability. *Berger*, 516 F.3d at 545. Because the ALJ sufficiently articulated the deficiencies in Dr. Kahloon's assessment of Rodgers's functional limitations, he did not err in relying on Dr. Kahloon's observations upon examination while also discounting his unsupported opinions.

### 4. The Magistrate Judge's Remaining Findings

To the extent the Magistrate Judge found that the ALJ improperly relied upon boilerplate language in determining Rodgers's credibility, the court rejects this finding. (Filing No. 38 at 2). A careful reading of the decision demonstrates that the ALJ considered Rodgers's functional capabilities, course of treatment, subjective statements regarding her symptoms, and aggravating factors such as her failure to complete the prescribed aerobics. (R. 16–19, 21–25). However, as discussed *supra*, the ALJ's misstatement of Dr. Podurgiel's opinion and failure to cite the findings of Dr. Winternheimer render the credibility determination void.

Lastly, the court agrees with the Magistrate Judge with respect to the ALJ's failure to explain the testimony of Dr. Richard A. Hutson, an orthopedist and expert witness, and the weight afforded to it in determining Rodgers's RFC. (*See* Filing No. 38 at 5). On remand, the ALJ must at least minimally articulate why he has accepted such testimony. *Berger*, 516 F.3d at 545.

16

## IV. Conclusion

For the reasons set forth above, the court **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's Report and Recommendation (Filing No. 38). The court **ADOPTS** the finding of the Magistrate Judge that substantial evidence does not support the ALJ's decision to the extent the ALJ (1) misstated the opinion of Dr. Podurgiel, (2) omitted the opinions of Dr. Winternheimer, and (3) failed to explain Dr. Hutson's testimony and articulate the rationale for according his opinions significant weight. The court **REJECTS** the Magistrate Judge's finding to the extent it requires the ALJ to mention the September 2009, March 2010, and July 2010 medical evaluations. On remand, the ALJ must reevaluate the entire medical record in a fresh light, accounting for the opinions of Drs. Podurgiel, Winternheimer, and Hutson.

**SO ORDERED** this 30th day of September 2014.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.